```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| STANLEY SHINN and PAUL ELLIS, | Civ. No. 16-777 (NLH/KMW) |
| Plaintiffs, | **OPINION** |
| v. | |
| FEDEX FREIGHT, INC., | |
| Defendant. | |

**APPEARANCES:**

LAW OFFICES OF ERIC A. SHORE, P.C.
By: Graham F. Baird, Esq.
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, Pennsylvania 19110
          Counsel for Plaintiffs

BALLARD SPAHR LLP
By: David S. Fryman, Esq.
    Amy L. Bashore, Esq.
    Steven D. Millman, Esq.
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002
          Counsel for Defendant

**HILLMAN**, District Judge

   This is an employment retaliation suit brought by Plaintiffs Stanley Shinn and Paul Ellis, both former drivers for Defendant FedEx Freight ("FedEx"). FedEx presently moves to dismiss six of the seven counts of the Amended Complaint. For the reasons set forth herein, the Motion will be granted in part, denied in part, and denied as moot in part.

**I.**

**A.   Plaintiff Shinn**

Shinn was hired by FedEx as a driver in 2003.  (Amend. Compl. ¶ 10)  He was fired on May 21, 2015. (Id. ¶ 26)  Shinn alleges that he was fired for two unlawful reasons.

First, Shinn alleges that he was fired in retaliation for participating in an investigation into a confrontation in a break room involving Plaintiffs Shin and Ellis on the one hand, and another driver, Steven Buckley, on the other. (Amend. Compl. ¶¶ 19-25)

According to the Amended Complaint, on April 29, 2015, Buckley allegedly walked into the break room and said to Plaintiffs, "'hey you two union fags, you couple of Facebook fags,'" (Amend. Compl. ¶¶ 19-20) to which "Shin replied, 'you want to go outside and talk about who is a fag?'" (Id. ¶ 22) The Amended Complaint does not allege what happened next, although the Amended Complaint does state that "at no time did Shinn or Beckley get into any physical altercation." (Id. ¶ 29)

FedEx allegedly "initiated an investigation" into the incident, and both Plaintiffs were interviewed as to what happened. (Amend. Compl. ¶ 24)  Shinn was fired less than a month after the incident.  FedEx allegedly "took no action whatsoever against Buckley." (Amend. Compl. ¶ 27)

2

Second, Shinn alleges he was fired for participating in union organizing activities in 2014. Specifically, the Amended Complaint alleges that both Shinn and Plaintiff Ellis advocated for unionizing, and then subsequently signed affidavits in support of the Teamster's unfair labor practice charge against FedEx filed with the NLRB. (Amend. Compl. ¶ 12-17)

**B.   Plaintiff Ellis**

Ellis was hired as a driver in 2004. (Amend. Compl. ¶ 8) He was fired on July 9, 2015. (Id. ¶ 34)  Ellis alleges he was fired for three unlawful reasons.  In addition to the two reasons described above -- participating in the investigation into the Shinn-Buckley break room confrontation (Amend. Compl. ¶ 38), and unionizing activities (Id. ¶ 39) -- Ellis alleges that he was fired in retaliation for using leave time authorized by the Family Medical Leave Act. (Id. ¶ 37)

Specifically, Ellis allegedly took a medical leave day on May 22, 2015 (Amend. Compl. ¶ 30), and was informed by another driver later that same day that Ellis had been assigned a particularly "distressing and oppressive" delivery assignment. (Id. ¶ 32)  Ellis was fired a little over a month later.

The Amended Complaint asserts the following counts: (1) "Title VII retaliation"; (2) "Title VII hostile work environment"; (3) violation of the New Jersey Constitution, Article 1, paragraph 19; (4) violation of New Jersey's

3

Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 et seq.; (5) violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2615 (asserted by Plaintiff Ellis only); (6) violation of New Jersey's Law Against Discrimination (LAD), N.J.S.A. 10:5-1 et seq.; and (7) "wrongful termination under New Jersey common law."[1]

FedEx moves to dismiss all claims except Plaintiff Ellis' FMLA claim.

## II.

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship) and 1367 (supplemental jurisdiction). Plaintiffs are citizens of New Jersey. Defendant is a citizen of Tennessee and Delaware. The amount in controversy is alleged to exceed $150,000.

4

all the facts that serve as a basis for the claim. *Bogosian v. Gulf Oil Corp.*, 562 F.2d 434, 446 (3d Cir. 1977). However, "the Federal Rules of Civil Procedure . . . do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009)("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*.").

### III.

**A.  The New Jersey Constitution count (Count III)**

In response to the instant Motion to Dismiss, Plaintiffs state in their brief that "Plaintiffs voluntarily withdraw Count III of their Amended Complaint." (Opposition Brief, p. 13, Docket #24-1)  The Court expects that Plaintiffs will promptly

5

file the appropriate Notice of Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

FedEx's Motion to Dismiss Count III will be denied as moot.

**B.   The Title VII counts (Counts I and II)**

FedEx moves to dismiss the Title VII claims asserting that Plaintiffs failed to exhaust their EEOC administrative remedies. In opposition, Plaintiffs argue that they "filed NLRB complaints against FedEx," and therefore "[t]o force Plaintiffs to re-file the identical charge or claims with the EEOC would be wasteful [and] unduly burdensome." (Opposition Brief, p. 13, Docket #24-1)

Plaintiffs' argument fails.  The statute requires EEOC exhaustion, *see* 42 U.S.C. § 2000e-5(f)(1); the Court cannot excuse the statutory requirement.  FedEx's Motion to Dismiss the Title VII claims will be granted.

**C.   The CEPA count (Count IV)**

Plaintiffs assert that FedEx violated CEPA when it fired Plaintiffs allegedly in retaliation for "participating in the NLRB charging process and investigation." (Amend. Compl. ¶ 69) FedEx argues this claim is preempted by the National Labor Relations Act.  The Court agrees.

A CEPA claim will be preempted by the NLRA when it presents a question that would be within the jurisdiction of the NLRB.

6

*Puglia v. Elk Pipeline, Inc.*, 226 N.J. 258, 289 (2016)("The concern animating federal preemption . . . is one of primary jurisdiction. . . . The critical inquiry is thus whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board.")(internal citation and quotation omitted). Such analysis is rather simple in this case because not only were Plaintiffs' claims within the NLRB's jurisdiction, those claims were "fully investigated and considered" by the NLRB, and then dismissed based on "insufficient evidence." (Amend. Compl. Ex. B)

Indeed, the NLRB has held that firing an employee for participating in a Board investigation violates Section 8(a)(4) of the Act. *Caterpillar, Inc.*, 322 NLRB 674 (1996); *Pillsbury Chem. Oil Co.*, 317 NLRB 261 (1995). Thus, it is clear that Plaintiffs' CEPA claims, which are based on the allegation that they were fired in retaliation for participating in a Board investigation, are preempted.

Plaintiffs argue in conclusory fashion that their CEPA claims fall within the "local interest" exception to preemption because CEPA is a broad remedial statute intended to effectuate important social goals. This argument fails. "The 'critical inquiry' in the 'local interest' cases 'is not whether the State is enforcing a law relating specifically to labor relations or

7

one of general application but whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the NLRB.'" *Londono v. ABM Janitorial Servs.*, 2014 U.S. Dist. LEXIS 172475 (D.N.J. Dec. 12, 2014)(quoting *Sears v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 197 (1978)). Thus, the local interest exception does not apply. FedEx's Motion to Dismiss the CEPA count will be granted.

**D.   The NJ LAD count (Count VI)--retaliation**

FedEx argues that the NJ LAD counts is simply a "repackaging" of the CEPA claim, and therefore the NJ LAD claim is also preempted by the NLRA, and should be dismissed in its entirety. The Court does not reach this issue, however, because Plaintiffs' LAD claim -- to the extent it is based on the allegation that they were fired in retaliation for union activity or participation in an NLRB investigation -- fails simply because the LAD does not protect union membership or support.

The statute protects against discrimination on the basis of "race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, pregnancy, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual,

8

or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer." N.J.S.A. § 10:5-12. Participation in union activities or union membership does not fall within the statute.

Sexual orientation, however, does. To the extent Plaintiffs' claims are based on the allegations that they were fired because of their perceived sexual orientation, or their participation in an investigation into whether another employee was harassing Plaintiffs on the basis of their perceived sexual orientation, the claims are not preempted by the NLRA and are actionable under the NJ LAD.

FedEx's Motion to Dismiss the NJ LAD count will be granted insofar as the count is based upon alleged union activity or participation in an NLRB investigation, and will be denied insofar as the count is based on Plaintiffs' alleged participation in the investigation of the Shinn-Buckley break room confrontation.

**E.    The NJ LAD count (Count VI)--hostile work environment**

To the extent that the NJ LAD count also asserts a hostile work environment claim, FedEx argues the claim fails because there are insufficient allegations to support a plausible

9

conclusion that FedEx's actions were severe or pervasive. The Court agrees.

The Amended Complaint alleges a single confrontation, in a break room, where a single co-worker allegedly uttered a derogatory term concerning Plaintiffs' perceived sexual orientation.

In opposition, Plaintiffs rely on *Taylor v. Metzger*, where the New Jersey Supreme Court stated that "a single utterance of an epithet can, under certain circumstances, create a hostile work environment." 152 N.J. 490, 501-03 (1998). *Taylor* is distinguishable from this case however, because the person who uttered the epithet in *Taylor* was a supervisor, whereas Buckley is alleged to have been a coworker. Several other courts have distinguished *Taylor* on this basis. *See Nuness v. Simon & Schuster, Inc.,* 2016 U.S. Dist. LEXIS 159315 (D.N.J. Nov. 17, 2016)(Simandle, Chief District Judge)("The facts of the *Taylor* case can be distinguished from the facts in the present matter. While the insult at issue here was clearly a racist slur and directed at the plaintiff, it was not uttered by a supervisor like in *Taylor*, but by a co-worker."); *Bagley v. W.J. Maloney Plumbing*, 2014 U.S. Dist. LEXIS 185309 (D. Ariz. Feb. 10, 2014)("*Taylor* is factually distinguishable in that the racially offensive comment was made by the highest ranking official in the county sheriff's office."); *Shaw v. FedEX Corp.,* 2012 N.J.

10

Super. Unpub. LEXIS 1872 (App. Div. July 20, 2012)("We reject plaintiff's argument that her circumstances were similar to those of the plaintiff in *Taylor,* where the county sheriff, in front of a high ranking undersheriff, referred to the plaintiff, an African-American sheriff's officer, by a very insulting racial slur and, later, berated her for feeling insulted.  As the Supreme Court noted, when the chief executive of the organization utters an unambiguously demeaning racial slur in front of another high ranking supervisor, the one severely insulting comment could be found to signal pervasive workplace racial hostility. In contrast, Hicks was plaintiff's co-worker, with no power to alter the terms of employment or the workplace.")(citations and quotations omitted); *Shain v. Hel Ltd.*, 2012 N.J. Super. Unpub. LEXIS 454 (App. Div. Mar. 2, 2012) ("Unlike in *Taylor*, the discriminatory comment was not made by plaintiff's ultimate supervisor.").

    Accordingly, FedEx's Motion to Dismiss the hostile work environment claim will be granted.  However, if Plaintiffs wish to supplement the current allegations supporting their hostile work environment claims, they may file a Second Amended Complaint within 30 days.

**F.    The common law wrongful termination claim (Count VII)**

    FedEx argues that the common law wrongful termination count should be dismissed because it is coterminous with the statutory

11

claims asserted.  The cases upon which FedEx relies, however, are decisions made at summary judgment.  The Court declines to dismiss this count at the pleadings stage; alternate pleading is expressly allowed by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d).  FedEx's Motion to Dismiss the wrongful termination count will be denied.

### IV.

For the foregoing reasons, Defendants' Motion to Dismiss will be denied as moot as to Count III.  The Motion will be granted as to Counts I, II, and IV.  The Motion will be denied as to Count VII.  As to Count VI, the NJ LAD count, the motion will be granted as to the hostile work environment claim however, Plaintiffs will be granted leave to amend; the motion will be denied insofar as the count is based on Plaintiffs' alleged participation in the investigation of the Shinn-Buckley break room confrontation; and the motion will be granted in all other respects.

An appropriate order accompanies this opinion.


Dated: December 6, 2016          s/ Noel L. Hillman____
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

12